UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| ZUELMA AVILA CASTANEDA, | ) CV 13-09489-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM DECISION<br>) AND ORDER |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Commissioner,<br>Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for a period of disability and Disability Insurance benefits (DIB). Pursuant to 28 U.S.C § 636(c), the parties have consented that the case be handled by the undersigned. The action arises under 42 U.S.C § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Brief with Points and Authorities in Support of Plaintiff's Complaint; Defendant's

Brief, and plaintiff's Reply); and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the Decision of the Commissioner should be affirmed.

On January 18, 2010, plaintiff Zuelma Avalia Casaneda filed an application for SSDI, with an alleged onset date of disability of March 9, 2009 due to left shoulder problems, depression and anxiety disorder. (Administrative Record ["AR"] 23, 114-115). The DIB application was denied initially on September 23, 2010 and upon reconsideration on February 10, 2011. (AR 79, 82-87). On May 22, 2012, an Administrative Law Judge ("ALJ") issued an unfavorable decision. The ALJ determined that plaintiff has severe impairments—"cervical degenerative disc disease, status post left shoulder surgery, borderline intellectual functioning, and depressive disorder"—but found that plaintiff was not disabled. (AR 23).

Following the Appeals Council's denial of Plaintiff's request for a review of the hearing decision, Plaintiff filed this action. (AR 7-9).

Plaintiff makes four challenges to the Decision. Plaintiff alleges the ALJ erred in (1) finding that Plaintiff could perform her past relevant work; (2) failing to properly consider the evidence of the physical limitations of the plaintiff; (3) in not stating the reasons for rejecting the treating and examining physician's assessment of Plaintiff's mental impairments; and (4) failing to give specific and legitimate reasons for rejecting the plaintiff's testimony.

### I. DISCUSSION
**ISSUE NO. 1:**

Plaintiff asserts that the ALJ erred in conluding that Plaintiff could perform her past relevant work because the ALJ only focused on one part of a job consisting of two components. Defendant asserts that the ALJ did not err and properly identified the Plaintiff's past relevant work as a housekeeper.

1  "Past relevant work" is defined as work the claimant performed within the past 15 years which amounted to substantial gainful activity, and lasted long enough for the claimant to learn the job. 20 C.F.R § 404.1560(b). The time necessary to learn an unskilled job is at most 30 days, since little specific vocational preparation and judgment are needed. 20 C.F.R § 404.1568(a). If a claimant can perform his or her past relevant work, he or she is not disabled. 20 C.F.R  404.1560(b)(3).

Plaintiff alleges that her job was a combination of being a housekeeper and a caregiver at Aegis senior living home. She argues that it was improper for the ALJ to separate Plaintiff's duties and then focus on the least demanding of them, the housekeeping duties. ( PB ["Plaintiff's Brief"] 11).  Plaintiff seeks to have her work  viewed as a combination of housekeeper and caregiver duties. This combination is unwarranted because plaintiff often described her job as only housekeeping duties, with the caregiver duties being a "promotion", and the housekeeper duties was the most representational of all the duties Plaintiff listed.

Plaintiff consistently described the title of her occupation at the senior living center as a "housekeeper". (AR 123. 136, 143, 148, 289). More often than not she described her housekeeping duties solely as cleaning activities. (AR 145, 248, 289). Plaintiff described the job duties as cleaning, vacuuming, doing the beds, laundry, cleaning the restrooms, cleaning windows, and dusting. She also described the job as requiring exertional activities consistent with light work. (AR 145). She reported her job in this way to both her treating physician, Richard Scheinberg M.D. ("Dr. Scheinberg"), and her treating psychiatrist, Thomas Curtis M.D. ("Dr. Curtis'). Similarly, these duties were listed on a Social Security Work History Report completed by Plaintiff and a helper, which only lists the housekeeping job and those duties associated with this job. (AR 143-145).

Plaintiff stresses her inability to speak English as a reason for these duties being listed on various forms referring to her job as "housekeeper". (AR 133-136). The court does not find this persuasive, as most of the reports cited by the ALJ were completed with the help of Plaintiff's son who acted as an interpreter, or with a professional interpreter. (AR 248, 303, 391). Plaintiff also tries to rely on the lack of signature, date of completion, or statements concerning the interview process to show incompleteness of the typed forms. These Social Security Administration forms did not require signatures. (AR 143). Additionally, the form prior to the "Disability Report-Adult", titled "Disability Report- Field Office" states the date and how the interview was conducted. (AR129-132). Finally, Plaintiff states that the job history part of the report is only a typed form when in actuality the Work History Report is a hand written document. (AR 143-155).

Plaintiff also indicated to Dr. Curtis that she performed caregiver duties <u>after</u> she was promoted from being a housekeeper. (AR 63, 289). She identified these duties as lifting, bathing, and feeding patients. (AR 52, 248). Accordingly, Plaintiff's own description of her past relevant work was consistent with the ALJ's finding that she worked as both a housekeeper and caregiver. (AR 29); Social Security Ruling (SSR) 82-62 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient" for identifying the past relevant work).

Plaintiff argues that it was improper for the ALJ to separate Plaintiff's past work in two occupations, citing <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1086-87 (9th Cir. 1985). In that case, the Court found that it was error for the ALJ to parse out a particular <u>task</u> of claimant's past job and reclassify the job according to that task. <u>Id.</u> The present case is distinguishable because rather than parsing out a single task, the ALJ selected the most representative past occupation. (AR 29, 63). The ALJ did not exclude job duties from the past relevant work analysis

because the ALJ views the duties as relating to two different jobs. Therefore, even though the caregiver components of the work performed by Plaintiff involve duties incompatible with the ALJ's residual functional capacity assessment, there is not an issue because the ALJ did not say that Plaintiff could do past relevant work as a caregiver, but that she could perform relevant work as a housekeeper. (AR 64-65).

**ISSUE NO. 2:**

Plaintiff asserts that ALJ failed to properly consider the evidence of her physical limitations. Defendant asserts that the ALJ properly evaluated Plaintiff's physical impairments.

On April 5, 2011, Dr. Montgomery assessed temporary work restrictions, including no over-shoulder use of the left arm, no repetitive or awkward movement or positioning of the neck, no heavy lifting, and no repetitive or forceful pushing, pulling, twisting or torqueing of the left arm. (AR 488). Similarly, in February 2012, Dr. Scheiberg assessed that, due to her neck impairment, Plaintiff should avoid repetitive cervical rotational activities, or flexion and extension activities of her neck; and, due to her left shoulder impairment, Plaintiff should avoid repetitive activities at or above shoulder level, and she should not lift in excess of 15 to 20 pounds. (AR 502).

These statements were made in the context of workers' compensation, which addresses different standards and concerns from Social Security disability and therefore are not directly applicable to a Social Security disability case. Nevertheless, it was appropriate for the ALJ to draw inferences logically flowing from such medical reports. Macri v. Chater, 93 F.2d 573, 576 (9th Cir. 1996); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)(the ALJ "is entitled to draw inferences logically flowing from the evidence").

The ALJ translated these limitations into Social Security requirements and found that Plaintiff could perform light work with no overhead reaching with the

1 left arm. (AR 29). Plaintiff's ability to do light work was further supported by
2 examining orthopedist, Steven Schwartz, M.D., and the State Agency reviewing
3 physician, J. Bonner, M.D. (AR 299, 310-311). As the ultimate adjudicator of
4 Plaintiff's residual functional capacity, it was reasonable for the ALJ to consider
5 all of the non-discounted medical opinions in his formulation. See 20 C.F.R §
6 404.1527(d)(2); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is
7 clear that it is the responsibility of the ALJ, not the claimant's physicians, to
8 determine residual functional capacity").

9 Moreover, in interpreting the workers' compensation doctors' opinions
10 and formulating Plaintiff's residual functional capacity, the ALJ also considered
11 relevant information such as mild diagnostic findings. For example, the ALJ
12 considered Dr. Montgomery's findings based on Plaintiff's MRI of her cervical
13 spine which revealed only some "small" disc bulges and EMG and nerve
14 conduction studies of Plaintiff's upper extremities which were normal. (AR 184,
15 275, 281, 292, 483). Additionally, examiners Dr. Schwartz and Dr. Montgomery
16 identified no impingement sign, instability or weakness in Plaintiff's left
17 shoulder.

18 The ALJ also considered Plaintiff's tendency to exaggerate her symptoms
19 during clinical examination. As Dr. Schwartz noted, Plaintiff showed multiple
20 Waddell's signs during physical testing.[1] With all these factors being considered,
21 the record evidence did not warrant any additional physical limitations. (AR 27,
22 29).

23 ///
24 ///
25 ///

---

[1] There are eight Waddell signs. Each sign "implies that the back pain has no physical cause." One or two of these signs can be from a patient's eagerness to cooperate or anxiety. Three or more are usually sufficient to show deliberate deception (malingering) and to rule out physical abnormality. Tennenhouse, 2 Attorneys Medical Deskbook § 18:4 (4th Ed. 2008), p. 142.

**ISSUE NO. 3:**

Plaintiff alleges that the ALJ did not state specific reasons for rejecting the treating and examining physician's opinion relating to Plaintiff's mental health. Defendant asserts that the ALJ properly evaluated Plaintiff's mental impairments and the limitations by considering the physicians' opinions.

Plaintiff contends that the ALJ improperly evaluated the treating psychiatric opinion of Dr. Curtis. (AR 25, 29, 335-336). Plaintiff asserts that Dr. Curtis assessed that she would have a poor ability to perform simple and complex instructions, a poor ability to interact with supervisors and a poor ability to react to and be aware of hazards. (AR 335-336). Normally, the treating physician's opinion is entitled great weight, but when the medical opinion runs contrary to the clinical evidence in the record, the ALJ need not accept it. See 20 C.F.R § 404.1527(c)(2); See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(an ALJ need not accept the opinion of a doctor that is "conclusory and brief and unsupported by clinical findings").

Here the ALJ found that Dr. Curtis' opinion was inconsistent with his mental status examination. (AR 29). Despite Dr. Curtis' representation that the Plaintiff had poor ability to perform even simple tasks, after March 2009, the mental status examinations consisted merely of components of emotional withdrawal, depressed expressions and visible anxiety, with no mention of any ongoing deficits in concentration, attention, memory or pace. (AR 223-224, 226-228, 238, 337-339). Based on the foregoing evidence, it was reasonable for the ALJ to favor the opinion of the State agency psychiatrist, Dr. Paxton, who opined that Plaintiff could perform simple work with some social restrictions. (AR 25, 231). The State agency psychiatrist's opinion showed greater consistency with the record as a whole and therefore constituted substantial support for the ALJ's decision. (AR 25, 321). See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("where the opinion of Plaintiff's treating physician is

contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict").

The ALJ also supports his Decision with the facts that the Plaintiff only recently pursued mental health treatment. (AR 29). In fact, prior to March 2009, Plaintiff received no therapy or psychotropic medications. (AR 251). Moreover, in discounting the extent of the plaintiff's limitations, the ALJ referenced evidence indicating that the plaintiff gave suboptimal effort during psychological testing, and exaggerated her symptoms during physical examination. (AR 25). This led to the ALJ properly discounting the examining psychologist, Dr. Martins, opinion because his opinion was based on psychological testing in which the plaintiff gave suboptimal effort. (AR 25, 306). Plaintiff's suboptimal effort invalidated the psychological test results, as well as undermined Plaintiff's overall credibility (AR 25, 29).

**ISSUE NO. 4:**

Plaintiff alleges that the ALJ did not give specific and legitimate reasons for rejecting her testimony. Defendant states that the ALJ properly discounted the Plaintiff's testimony of disabling physical and mental symptoms.

In order to discount the plaintiff's testimony the ALJ's credibility findings must be properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ found that Plaintiff was overstating her complaints of pain and dysfunction based on objective medical findings, evidence of malingering, physician's opinions, and daily activities.

Plaintiff complained of disabling neck pain, but an MRI of Plaintiff's cervical spine revealed only some "small" disc bulges. (AR 292, 483).

1   Additionally, despite allegation of left upper extremity pain and dysfunction, an
2   MRI of her left shoulder showed only "mild" arthritis and an EMG and nerve
3   conduction studies of Plaintiff's upper extremities were normal. (AR 184, 275,
4   281). Furthermore, examiners Dr. Schwartz and Dr. Montgomery identified no
5   impingement sign, instability or weakness in Plaintiff's left shoulder. (AR 298,
6   484, 493).

7   This being the case, it was proper for the ALJ to consider the foregoing
8   minimal objective medical findings as a factor for discounting Plaintiff's
9   credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although
10  lack of medical evidence cannot form the sole basis for discounting pain
11  testimony, it is a factor that the ALJ can consider in his credibility analysis").

12  The ALJ also found evidence of malingering in the record. (AR 25,29).
13  Dr. Schwartz observed that Plaintiff was a vague historian and showed multiple
14  signs of malingering (Waddell's signs) during physical examination. (AR 298).
15  See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(upholding an ALJ's
16  negative credibility determination based, in part, on an examining physician's
17  suggestion that the plaintiff may be mildly amplifying his pain). Likewise, Dr.
18  Martin noted that Plaintiff gave suboptimal effort during testing which he
19  attributed to depression. (AR 306, 308). Given the other evidence of
20  malingering, it was reasonable for the ALJ to find Plaintiff's suboptimal effort
21  was intentional and for secondary gain. (AR 25, 298, 306).

22  In addition, the ALJ noted that despite Plaintiff's allegation that she could
23  only sit, stand or walk a maximum of a half hour a day, most physicians in the
24  record found she could perform a range of light or medium work (AR 29, 61).
25  The fact that no physician endorsed Plaintiff's alleged level of dysfunction,
26  undermined the credibility of those statements. See Hernandez v. Colvin, 2013
27  WL 1401368, *2 (C.D. Cal. April 4, 2013)(finding that the lack of a medical
28

source endorsing the extent of the claimant's alleged functional limitations was a legally sufficient reason for discounting her credibility).

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed and the Complaint is dismissed.

DATED: July 28, 2014

_____
STEPHEN J. HILLMAN
United States Magistrate Judge